JOHN R. HERRING V. THE ESTATE OF SOPHIA A. HERRING,
    Deceased, AND THE FIRST METHODIST EPISCOPAL
              CHURCH, Appellant.

**Transaction with Decedent.** Plaintiff cannot support a claim for
1    services alleged to have been rendered a decedent by testifying as
    to what was done, and that advances were made and not repaid.

**Practice:** INSTRUCTIONS. Where evidence is improperly admitted it
·2   is error to charge upon its effect.

*Appeal from Lee District Court.*—HON. J. M. CASEY,
                          Judge.

                TUESDAY, APRIL 2, 1895.

        This is a proceeding in probate by which the plaint-
iff seeks to establish a claim against the estate of Sophia
Herring, deceased.   The First Methodist Episcopal
Church of Ft. Madison is the principal legatee under
the will of the deceased, and it appeared to the proceed-
ing, and resisted the claim of the plaintiff.  There was
a trial by jury, which resulted in a verdict and judg-
ment for the plaintiff.   Defendant appeals.—*Reversed.*

    *T. B. Snyder* for appellant.

    *Casey & Stewart* for appellee.

        Rothrock, J.—I.   As we understand the record,
the deceased was the widow of a brother of the plaintiff.
He was executor of her will, and when he filed his claim
against the estate he petitioned the court to appoint a
temporary executor to act upon the claim.   After the
First Methodist Church filed its answer in denying and
contesting the claim, it was agreed in open court that

no temporary executor should be appointed, and the
matter was set down for trial on the claim of the plaint-
iff, the answer thereto by the said church, and the
"denial of plaintiff's claim by law."   This last part of
the agreement doubtless had reference to section 2410
of the Code, which provides that "all claims filed and not
expressly admitted in writing signed by the executor,
with the approbation of the court, shall be considered
as denied, without any pleading on behalf of the estate."
Under the agreement above referred to, the cause was
required to be tried precisely as it would have been if
a temporary executor had been appointed, and under
the same restrictions as to the necessary evidence to
establish the plaintiff's demand.   The claim was in this
form:

To services rendered Sophia A. Herring from
   July, 1879, to January, 1893, in attending to
   all her business, renting her property, col-
   lecting rents, making and overseeing repairs,
   payment of taxes, insurance, etc., being thir-
   teen years and six months, at $35.00 per year  $472 50
To cash paid for taxes March 19, 1892........   23 26
To insurance paid April 1, 1892............   22 50
To painting and repairing roof, June 1, 1892..   23 00
To cash paid for taxes September 20, 1892....   23 27
To cash paid for connecting with water mains
   and pipe in house, October 13, 1892........   22 00

                                                            $586 53

    The principal controversy in the case is in refer-
ence to that part of the claim for services from July,
1879, to January, 1893, amounting to four hundred and
seventy-two dollars.   The plaintiff was a witness in his
own behalf and testified in part as follows: "Am
plaintiff.   Live five miles from Ft. Madison.   Was a
brother-in-law of Sophia Herring, deceased.   She lived

in Ft. Madison the biggest part of the time from July, 1879, up to her death. Was living in the country for last three or four years. Lived part of the time with my son, part at Rice's, sometimes with Duey's and visited around. Int. 8. What if any business did you attend to for her from July, 1879, up to the time of her death? Int. 9. I will now ask what you did in the way of looking after this property, in the way of paying insurance and taxes, etc.? Ans. I paid her taxes and insurance, and rented the property, received the rents, and attended to having the repairs that should be done about the house; paid taxes on property; put a new tin roof on; had carpenter work done. I always had seen about the renting of that property. Generally received and receipted for the rents. Paid taxes every year, unless there was one year that Rice lived with them. Attended to having property insured. Think I made twelve or thirteen trips a year to town on her business. Cannot say as to total number of times I came in. I thought my services were worth the price charged,—$35 a year. The cash items for taxes, of $23.26, and $23.27, I paid out of my own money. I have never been paid for that by anybody. (Tax receipts for above introduced.) The cash item for insurance, of $22.50, I paid out of my own money. It has never been repaid. I paid $22 for putting in water service. The taxes I paid were for the same house. For repairs and tin roof, January 1, 1892, $23, I paid Mr. A.; part was paid for painting. I paid for tin work to him. Some was for paints I got. Did not put down the items and work. Don't recollect the amount of tinwork. I receipted for it. I paid that $23 out of my own money. It has never been repaid." All of this testimony was objected to as being in the nature of personal transactions between the plaintiff and the deceased. The

objection was overruled, and a proper exception was taken.

It is unnecessary to cite section 3639 of the Code in full. It is a plain and unequivocal provision of the law, which absolutely prohibits a party to an action from being examined as a witness in regard to any personal transaction or communication between such witness and a deceased person, in an action against the executor of such person. It will be seen by the most cursory examination of the testimony of the plaintiff that the ruling of the court cannot be sustained. It is in direct conflict with the case of *Peck v. McKean*, 45 Iowa, 18; *Smith v. Johnson*, Id. 308; *Wilson v. Wilson*, 52 Iowa, 44, and other cases in this court in which the rule has been established that, where it is sought to recover against an administrator for work or services performed with the knowledge or assent of the deceased, the party seeking to recover cannot testify as a witness that he performed the work or services. It is claimed in behalf of appellee that the rule is applicable to implied contracts, only. The statute makes no such exception. And the case of Cowan v. Musgrave, 73 Iowa, 384, holds that such evidence cannot be allowed where the services are claimed to have been rendered under an express agreement for compensation. It is urged that, if there was error in admitting the evidence, it was without prejudice, because the facts testified to by the plaintiff are not disputed, and are clearly proven by other undisputed evidence. We do not concur in this conclusion. When error is shown, prejudice is presumed, and we discover no ground for holding that the presumption is overcome by other evidence.

II. The defendant contends that all of the claim which accrued to the plaintiff prior to five years before the commencement of this proceeding is barred by the

statute of limitations, as provided in sections 2529 and 2531 of the Code. We do not approve of that part of the instructions given by the court, that if it was the understanding of plaintiff and the deceased that compensation was to be made for the services out of her estate, after her death, the statute of limitations did not apply. The error in this instruction is that—when the plaintiff's testimony is excluded, as it should have been—there is no evidence of any understanding between the parties on the subject.

III. It is also insisted that it was not shown that the claim was "a continuous, open, current account," as provided by section 2531 of the Code. We do not determine this question for the reason that when the cause is again tried the evidence may not be the same as it was on the trial from which this appeal was taken. The judgment of the district court is *reversed*.