H. R. Siemonsma, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

**Appeal:** RULINGS UPON EVIDENCE: REVIEW. No appeal lies from a ruling on evidence: such a ruling can only be reviewed where the error inheres in the judgment and by the appeal it is sought to modify or reverse the judgment.

**Carriers:** DELAY OF SHIPMENT: DAMAGES: CONTRACTS LIMITING LIABILITY: EVIDENCE. Under the statute the liability of a carrier to transport a shipment with reasonable dispatch cannot be avoided or limited by contract; and where live stock is accepted for shipment recovery for an unreasonable delay is not barred by a contract that the shipper shall not be responsible for damages arising therefrom. Evidence held insufficient to show unreasonable delay.

*Appeal from Sioux District Court.—* Hon. Wm. Hutchinson, Judge.

Wednesday, March 11, 1908.

Action at law to recover damages growing out of the

negligence of defendant in connection with a shipment of cattle. There was a verdict in favor of plaintiff, on which judgment was entered. Both parties appeal. The defendant will be denominated the appellant; its appeal being first in point of time.— *Reversed.*

*Shull, Farnsworth & Sammis, J. H. Hutchinson,* and *C. A. Plank,* for appellant.

*G. Klay* and *G. T. Hatley,* for appellee.

BISHOP, J.— We may first dispose of plaintiff's appeal. Defendant operates a line of railway from Chicago west across the States of Illinois and Iowa, crossing the Mississippi river at Savanna. Plaintiff resides at Rock Valley, a station on the line of defendant's railway in Sioux county, Iowa. On Monday, July 3, 1905, plaintiff delivered to defendant for shipment from Rock Valley to Chicago two hundred and forty-three head of cattle, and it is the contention made by him in pleading that the shipment contract entered into was oral in part. He says that it was orally agreed by defendant that said cattle should be transported by special train, " and, while it could not guarantee to transport said cattle in 28 hours, it would use every effort to do so, and to deliver said stock in Chicago in time for the market held on the second day after leaving Rock Valley "; that after said stock had been accepted by defendant, and loaded on cars, " the parties, for the purpose of enabling the persons in charge of said stock to prove their right to free transportation, reduced part of the oral agreement to writing," and a copy of the writing is attached. On its face the writing is designated as a " Limited Liability Live Stock Contract," and one of the provisions thereof is that " the company shall not be liable for injury or damage to said stock by or on account of the delay thereof during its transportation, and it does not agree to deliver said stock at destination at any specified time." According to the further

allegation of the petition, the stock was not delivered in Chicago within twenty-eight hours, or on the morning of the second day after shipment, and on this is predicated the claim for damages. The answer of defendant makes denial of the oral agreement pleaded, and it is alleged that the writing exhibited by plaintiff contains all the agreements between the parties respecting the shipment. in question. On the trial plaintiff sought to make proof of the oral agreement pleaded, and, defendant objecting, he was not permitted to do so. The case was then tried and submitted to the jury, on the theory that the writing evidences the contract of the parties. On the coming in of the verdict plaintiff did not complain thereof, as to the amount or otherwise, by motion for new trial, nor did he save an exception to the judgment entered thereon in his favor.

In plaintiff's notice of appeal, it is stated that the appeal is " from the rulings and judgment of the district court," etc. In the brief it is said that the error relied on

1. APPEAL: rulings upon evidence: review.

for reversal arose out of the refusal of the court to permit plaintiff to make proof of the oral agreement pleaded. Just what is intended by the appeal is not easy to determine. We cannot believe that plaintiff wants the judgment in his favor — of which he has not and does not complain as inadequate — reversed. And yet he says as much in presenting his appeal, while on defendant's appeal he strenuously insists that the judgment was right, and should be affirmed. Counsel does not point out to us how we may at one and the same time both reverse and affirm a judgment, and we confess our inability to meet the problem. It may be — and this seems most probable — that the appeal is expressive only of a desire that we rebuke the trial court for error in the ruling on evidence, and, having done this, that we stop short of any interference with the judgment. Respecting this, it is sufficient to say that no appeal lies from a ruling on evidence. Such can only be reviewed where the error inheres

in the judgment, and the appeal is brought to secure a modification or reversal of such judgment. See Code, section 4101, and cases cited thereunder.

II. Coming now to a consideration of defendant's appeal, it is proper that we take note to begin with of the issue upon which the case was tried. The trial court, as we have

2. CARRIERS: delay of shipment: damages: contracts limiting liability: evidence.

seen, took the view that the contract rights of the parties were measured by the provisions of the writing signed by them at the time of shipment, and rejected the evidence brought forward by plaintiff to establish an oral agreement additional thereto. And, in disposing of the appeal, we are required to proceed upon the like theory, and accept of the action as one having reference back only to the written contract. It will be remembered that one of the provisions of such contract is that the defendant shall not be liable for damages caused by delay in transportation, nor shall it be held to any particular time for delivery. The petition alleges that twenty-eight hours is a reasonable time in which to make the run from Rock Valley to Chicago, and that had the run been so made, the cattle would have arrived at the stockyards in Chicago on the morning of July 5th in ample time for the market of that day. The allegation follows that defendant did not use proper effort to accomplish the shipment in said time; that " by reason thereof, at the expiration of twenty-eight hours from leaving Rock Valley, said stock had only reached Savanna, . . . and under the provisions of the United States statutes said stock had to be there unloaded, fed, and watered, and kept for at least five hours "; that in consequence of all which plaintiff was not able to put his cattle on sale in Chicago until the market opening on the morning of the following day. The damages claimed are based upon an alleged decline in the market price, also, in the additional depreciation in the condition of the cattle caused by the delay. As we have seen, the defendant relies upon the written contract,

and denies that the shipment was unreasonably or negligently delayed. At the close of all the evidence in the case, the defendant moved for an instructed verdict in its favor, on the ground, among others, that negligence on its part had not been shown. The motion was overruled. The like contention was presented by motion for new trial after verdict, and such motion was overruled. Out of these rulings arise the matter of error principally relied upon to reverse the judgment.

The rules of law applicable to the subject are well settled, and it will not be found amiss to take brief note thereof looking into the evidence. Where a railway company accepts live stock for shipment, it becomes its duty to transport the same with all reasonable dispatch to the point of destination. This is not only a rule of the common law, but in this State it is so provided by statute. Code, section 2116. Further, it is a matter of statute that the liability consequent in law upon a failure to properly perform the duty cannot be avoided or limited by any provision inserted in the shipment contract. Code, section 2074. So it is that where, as here, stock is accepted for shipment without any agreement in terms respecting the time of delivery at the place of destination, but with an agreement that the carrier shall not be responsible for damages arising out of any delay in shipment, the shipper is not debarred from a recovery if, in truth, the delay was unreasonable and hence negligent. As in all other cases where a right to damages is predicated on negligence, the proof must come from him who asserts the failure of duty.

Recurring now to the record before us, it appears that the cattle were loaded on cars at Rock Valley at about 6:30 o'clock in the evening. They were taken through on a regular stock train which was scheduled to arrive at Savanna, a division station, at 9:05 o'clock on the evening of the next day. In fact, the train reached the station fifteen minutes late. It will thus be seen that substantially twenty-seven

hours were consumed in making the run. At Savanna the cattle were unloaded, fed, and watered and this in conformity with the federal statute, which provides that the cattle shall not be permitted to remain in cars longer than twenty-eight hours without being unloaded, fed, watered, and allowed to rest at least five hours before being reloaded. The cattle in question were unloaded about eleven o'clock, fed and watered. Reloading, under the law, could not begin before four o'clock a. m., and it appears that at least an hour's time would be necessary to that process. The schedule time for stock trains from Savanna to the stockyards in Chicago was eight hours. From this it becomes apparent that it was impossible for a train operated under the time schedule to make the run from Rock Valley to the stockyards in Chicago in twenty-eight hours, or, stating the proposition in the other form, for a train leaving Rock Valley on Monday evening to reach the Chicago yards in time for Wednesday morning market. And from this it follows that, if negligence there was on the part of defendant, it consisted in operating its train under a time schedule unreasonably slow. And, in respect of this, there is no competent evidence in the record. We find nothing having possible bearing, except the testimony of several stockmen who say that in times past they had accompanied stock to Chicago, and the trip had been made in twenty-eight hours or less. Cross-examination developed that, when trips had been made in that number of hours, it had been made by special train, and generally run on Sunday, when the tracks were comparatively clear. It would be contrary to all authority and against all reason to say that such testimony should be accepted as sufficient to convict a railway company of adopting for the movement of its trains a time schedule so far dominated by unreason, as that operation thereunder must be accepted as of itself constituting negligence.

We think the motion for a verdict should have been sustained. Having reached this conclusion, it is not neces-

sary that we consider other questions made in argument. The judgment is reversed, and the case is ordered remanded for a new trial.— *Reversed.*