H. H. Sawyer, Appellee, v. Iowa Constitutional Prohibitory Amendment Association, Appellant.

**APPEAL AND ERROR: Question of Fact—Conflict of Evidence—**
1    **Judgment of Trial Court—Conclusiveness.** The verdict of a jury on a fair conflict of evidence, confirmed by the action of the trial court in refusing to set it aside, will not be disturbed on appeal.

**PRINCIPAL AND AGENT: Unauthorized Act of Agent—Ratifica-**
2    **tion by Accepting Benefits.** One who knowingly and voluntarily does anything which shows approval of an unauthorized act of his agent thereby ratifies the act and makes it his own. So held where plaintiff, in the employ of a prohibitory amendment association, advanced, without authority, his own money to the association, to enable certain lectures to be carried on in the interest of the work of the association, and where the association, with knowledge of the facts, participated in the financial benefits accruing from the meetings.

**NEW TRIAL: Excessive Verdict—Option to Remit or New Trial—**
3    **Power of Court.** The court has undoubted power, whenever satisfied that the verdict of a jury is excessive, to order a new trial, in the event that the prevailing party refuses to remit a designated portion of the verdict.

**APPEAL AND ERROR: Appellate Jurisdiction—Lack of Recitals—**
4    **Presumption.** Lack of fullness in the recitals in the abstract of jurisdictional facts raises no presumption of lack of jurisdiction to entertain the appeal. In such case, a conclusive and contrary presumption prevails, unless appellee specifically demonstrates in printed form, served 10 days prior to submission, that the court is without jurisdiction. (Sec. 4139, Code Supp., 1913.) So held where the abstract did not recite that the appeal notice (set forth in full) was signed, or that it had been served.

Salinger, J., dissents as to construction placed on the statute.

*Appeal from Polk District Court.*—LAWRENCE DeGRAFF,
Judge.

THURSDAY, JUNE 29, 1916.

ACTION to recover for money had and received. Judgment for the plaintiff in the court below for part of plaintiff's claim. Both parties appeal.—*Affirmed.*

*E. D. Samson* and *H. W. Byers,* for appellant.

*H. H. Sawyer* and *J. E. Holmes,* for appellee.

GAYNOR, J.—The abstract in this case contains 80 pages. Appellee's denial of appellant's abstract contains 56 pages. Two amendments by appellant contain, respectively, 7 and 22 pages. This voluminous presentation of the record has made it somewhat difficult for this court to reach and, reaching, dispose of the real questions in dispute. The fact is that the controversy is not very complicated. The disposition of this case really requires the consideration of but two propositions: (1) That the salary of the plaintiff was fixed for 2½ months only; that his salary for any time longer than that was contingent upon the plaintiff's raising the money himself with which to pay his own salary, after paying the other expenses of his employer; (2) that the alleged loan of $500 made by the plaintiff to the defendant could not be authorized by the defendant for the purposes to which the loan was to be, and was, applied; in fact, that the loan was not authorized at all. Defendant also alleges that it received no benefit from the transaction, and has not ratified it. It is practically upon these assertions that appellant bases his claim that the judgment below is erroneous.

I.   The first specification of error is that the verdict is not supported by, and is contrary to, the evidence, and con-

trary to law, and that the court, therefore, erred in overruling defendant's motion for a new trial. On the question of fact as to what the agreement touching the salary actually was, the testimony is in sharp conflict. The appellant points out that the testimony of plaintiff differs radically from that given by him in another proceeding, and claims that the preponderance is greatly against him. While this is an argument in support of the error assigned, it is also a confession or admission that there was a dispute touching the fact, between the contending parties and their witnesses.

**1. APPEAL AND ERROR: question of fact: conflict of evidence: judgment of trial court: conclusiveness.**

As to who had the preponderance of the evidence upon the record made, this was a question for the jury. It was their duty to solve the conflict and determine the truth out of it all. They were the judges of the credibility of the witnesses and the weight to be given to their testimony. They resolved it against the defendant. The trial judge who passed upon the motion for a new trial heard these witnesses, observed their demeanor upon the stand, saw them in the act of testifying, and he, undoubtedly, was in a better position to judge this question rightly than are we. He determined appellant's controversy against it. We, therefore, are not disposed to take issue with the jury and the trial court upon these disputed questions of fact.

On the issue as to what the salary was or was to be, the testimony being in sharp conflict, we cannot interfere with the disposition of that issue made in the court below.

II. On the advancement of the $500 from plaintiff to defendant, the situation differs in that there is involved not so much a controversy of where lies the preponderance, or as to how the conflict should be settled, but on whether the conceded facts are sufficient to entitle the plaintiff to recover. It is undisputed that plaintiff deposited $500 of his money to the credit of his employer. The

**2. PRINCIPAL AND AGENT: unauthorized act of agent: ratification by accepting benefits.**

appellant concedes that the purpose of this deposit was that it should be used in paying one Tricket for delivering public addresses promotive of the development of sentiment for temperance. It is admitted that the cardinal object of the existence of defendant was to advance the adoption of an amendment to the Constitution, prohibiting the sale of intoxicating liquors. There appears in the amendment to abstract served by the appellee, not disputed by any certification of the record, as we are advised, what, in effect, amounts to evidence that officers of the association attended the meetings held by Tricket; that collections were taken up at these meetings, of which the local association or branch took half and the other half was remitted to this defendant; that both the advancement of the $500 and these remittances appeared upon the books of the defendant association; that an auditor examined these books; and that, at least on one occasion, the report of the audit was submitted to the board of defendant and was received without objection. Employing a lecturer to create public sentiment for the advancement of objects of a corporation is not an act *ultra vires*. But, while the corporate body had authority to employ and pay Tricket, of course it does not follow that its secretary had power to loan it money for that purpose without its knowledge and consent; and it is probably true that he had originally no authority to use any money of the defendant's for such purposes. It is also true that, while notice to the secretary of defendant would ordinarily be notice to it, this is not so as to this loan and its use. Knowledge by an officer of an act of his own, which he seeks to make the basis of a recovery from his employer, is not notice of such act to the latter. On the other hand, where an act done by its officer is spread upon the books of the corporation, the record will, after a reasonable time at least, work notice, on the reasoning that, though the person spreading it there did not thereby impart notice, the managing officers would, in reasonable time, become apprised of what the books showed. But that is not very controlling. Since the defend-

ant was not charged with notice of this one-sided loan at the time when it was made, it cannot be affected by the naked fact that such loan has been made. This knowledge does not enable it to undo what had been done. Notice is never material unless the getting it creates opportunity to act effectively.

But, while one is not bound to repay an advancement merely because he is advised, after all is done, that it has been made and expended, notice thereof may be one item in the proof that some affirmative action which the actor was at liberty to do or not to do, and which it did with knowledge of the facts, operated as a ratification. There is one outstanding fact to which the appellant itself calls attention, the effect of which it seems to misapprehend. In an amendment to abstract filed by it, we find this statement:

"Exhibit 13 of evidence (that being a daybook of appellant), shows cash received by appellant on November 3, 1910, as follows: 1910, November 3d, cash by Dr. Batten, Marshalltown, Tricket's meeting, $27.87."

There is undisputed evidence that Dr. Batten, an officer of the defendant, attended the Tricket meeting at Marshalltown, and from there remitted to defendant half the proceeds collected. As seen, there is undisputed evidence that this remittance was received and spread upon the books of appellant. It appears that appellant knows of it and puts it into the record here. There is no claim that it or any other like remittance was ever returned to this plaintiff, or offered. As said, the question is not what is the evidence, but what construction the law shall put upon it. Appellant insists that the Tricket venture was a financial failure. This, taken in connection with the concession that something was received by the defendant from these meetings, seems to make clear that, in the opinion of appellant, the advancement of the $500 and its expenditure were not ratified because the defendant received less from the venture than it is asked to pay on account thereof. We think this is not the law. Ratification is not a matter of sizes, nor does it depend upon its being

profitable to him who ratifies. The cardinal test is, Has the one sought to be charged knowingly and voluntarily done anything which shows approval? If A signs the name of B to a promissory note, without the knowledge and consent and authority of the latter, and thereupon obtains $500, if thereafter A paid this $500 to B and told him how it had been obtained, all would agree that B would be bound to pay the note. But exactly the same would be true if, instead, B was informed that $500 had been obtained and consented to accept $100 of the proceeds. The acceptance of the $100 would accomplish the same as the paying over of all that was obtained upon the note. We think the illustration is not stronger than the actual case. · Defendant knew that somebody was to pay, and was paying, Tricket. It knew what Tricket was doing; it knew that it had received money through Tricket's work. It keeps this money and does not offer to repay it after it is fully advised who paid Tricket. We think the court was ·fully warranted in at least sending this branch of the case to the jury, and that its finding may not be disturbed.

III.   Appellee has made a cross-appeal in this case. His contention is that the jury returned a verdict in his favor, fixing the amount to which he was entitled; that the court, on its own motion, arbitrarily reduced this amount and compelled the plaintiff to take a smaller amount than that fixed by the jury. This is not a correct interpretation of what the court actually did. The jury returned a verdict for the plaintiff for $605. The defendant filed a motion for a new trial and, among other things, alleged that there was error in the assessment of damages. The record on the motion for a new trial is in the following words:

3. NEW TRIAL: excessive verdict: option to remit or new trial: power of court.

"Now on the motion of defendant for a new trial, the court having listened to the arguments of defendant and plaintiff on said motion, the said motion is overruled on condition that plaintiff accept in full satisfaction of said verdict,

the sum of $500, with 6 per cent interest from the date of the verdict.''

The plaintiff thereupon signifying his election to accept the payment of $500, with interest thereon, in full satisfaction of said verdict, the motion was overruled, and judgment entered for the plaintiff for $500, with interest.

.It will be noticed that the court did not arbitrarily fix the amount which plaintiff was entitled to recover, nor did the court arbitrarily say that the plaintiff should recover less than the amount fixed by the verdict, but simply gave to the plaintiff the option of taking judgment for $500, thus giving the plaintiff the option to remit what the court deemed excessive in the verdict, or take a new trial. The plaintiff accepted the first alternative, and the court entered judgment accordingly.

We think the action of the court finds support in *Carmichael v. Bettendorf Axle Co.*, 171 Iowa 221, and that no reversible error can be predicated upon this contention of the defendant's. On plaintiff's appeal, the cause is also affirmed.

It is suggested in this court that we ought not to consider this appeal at all; that this court has no jurisdiction to consider this appeal, and it ought not, therefore, to be disposed of upon the merits, but dismissed because of

4. APPEAL AND ER-
ROR: appellate
jurisdiction:
lack of recitals:
presumption.

want of jurisdiction. The contention is that the abstract fails to show that the notice of appeal bore the signature of the appellant. The record recites as follows: ''On November 27, 1914, the plaintiff filed the following notice of appeal.'' This notice is duly directed to the attorney of the opposing party, and to the clerk of the district court, and states fully what is being appealed from; but the abstract shows no signature to the notice thus set out, and it is asserted here that without this signature the notice is fatally defective, and this court acquired no jurisdiction. It is contended also that the record fails to show that this notice was served, and that this is also such a defect as ousts us of jurisdiction. This question is not

raised by appellant, nor has appellant seen fit to file any objection to the jurisdiction of the court, based upon that ground, nor has our attention been called to any question by either party to the suit, involving the jurisdiction of this court to finally determine the issues presented. The contention that there is no jurisdiction here might be favorably received and might dispose of this case, if it were not for the provisions of Section 4139, Code Supp., 1913, which reads as follows:

"All objections to the jurisdiction of the court to entertain an appeal must be made in printed form stating specifically the ground thereof and served upon the appellant or his attorney of record not less than 10 days before the date assigned for the submission of the cause."

This is what is known as the Peterson Act, and we take it that the purpose and object of the act is to protect litigants from having causes dismissed in this court on the simple ground that the abstract fails to show in all their fulness the facts upon which jurisdiction rests. We are not presumed to know what the facts are touching the service of notice, except as the abstract exposes this fact to our view.

In the record before us, the abstract discloses a notice sufficient in form and substance, addressed to the proper parties, but fails to disclose that the notice was signed by appellant or his attorney, and fails to disclose the fact of service. Whether this notice was signed and served or not is a question of fact, independent of any showing of the fact upon the abstract. It may be a fact that the notice was signed and was served, though the abstract does not disclose it, and that jurisdiction was conferred upon this court thereby. As said before, we cannot know this fact except from the abstract. To defeat jurisdiction on the ground that the abstract does not show the fact, the party who desires to avail himself of a plea of want of jurisdiction must follow the course pointed out in this Peterson Act; otherwise, this court

will assume, notwithstanding the abstract is silent upon this question, that the notice was signed and served as required by law. Surely, it could not be contended that, if this court should assume jurisdiction of a case such as we have here, without its attention's being called to the fact, and without itself discovering the fact that the abstract does not show the jurisdictional fact, and it should decide the case adversely to the person whose duty it was to call the court's attention to the want of evidence of this jurisdictional fact in the abstract, the defeated party could treat the judgment as a nullity and base his conduct on the ground that the court had no·jurisdiction to enter the judgment. We think that the Peterson Act, under such conditions, has the effect of estopping the appellee from asserting the want of jurisdiction. Having failed to take advantage of the fact, if it be a fact, as required by this section, he must forever hold his peace. A conclusive presumption of jurisdiction obtains against him.

But it is said that, if the court discovers the fact that the abstract fails to show the jurisdictional fact, it is the duty of the court to act upon the assumption that the abstract is a complete exposé of what was done, especially when there is an attempt to set out the notice in full, and, as set out, it shows no signature. As a general rule of practice, the court confines its attention and its investigation to the matters to which its attention has been challenged by the parties to the suit, and disposes only of those matters so called to its attention; and we think it would not be contended that, if the court's judgment was not challenged to the want of jurisdiction, and the court failed to discover that the abstract did not show all the jurisdictional facts, the party whose duty it was to challenge the jurisdiction could, after a final disposition of the cause, raise the question.

But it is contended that, if the court does discover it, the court must assume, under such circumstances, that it has no jurisdiction and act accordingly. This would leave the

rule too loose for practical purposes, and would leave the validity of the judgment to depend in some cases upon whether the judge cared to inform himself·upon this question. If he did not, the court would have jurisdiction, and the judgment would be valid. If he did discover it, and proceeded to a determination of the case, notwithstanding the fact, the judgment would be invalid, if peradventure it should be subsequently discovered that the court knew of the defect in the abstract at the time of the rendition of the judgment. We think the Peterson Act, above referred to, was intended to enable the adverse party to amend his abstract to show the truth, if it could be done. So the legislature said:

"All objections to jurisdiction must be urged 10 days before the date assigned for the submission of the cause."

We think the inevitable conclusion from this statute is that the court must assume the existence of the jurisdictional fact, notwithstanding the paucity of the evidence of the fact in the record, in the absence of any objections made as provided in Section 4139, Code Supp., 1913. It is claimed, however, that there is affirmative evidence of the want of jurisdictional facts in the abstract itself. This we cannot concede. The record fails to show all the jurisdictional facts, but it does not negative the existence of the jurisdictional fact.

In so far as *State v. Abbott,* decided by this court December 17, 1915, 155 N. W. 270, is inconsistent with what we have here said, it is overruled.

We think on both appeals the cause must be affirmed on the merits.—*Affirmed.*

EVANS, C. J., DEEMER, LADD, WEAVER and PRESTON, JJ., concur. SALINGER, J., concurs in result reached, but dissents as to holding on question of jurisdiction.

SALINGER, J. (concurring specially).—While I agree that plaintiff should take nothing from his cross-appeal, I think that should be effected by a dismissal, and not by an affirmance.

Before the passage of Section 4139 of the Supplement to the Code, 1913, known as the "Peterson Act," this court was compelled to dismiss an appeal on its own motion if the facts giving jurisdiction did not appear in the abstract affirmatively. See *Clayton v. Sievertsen*, 115 Iowa, at 688, and cases there cited; also *Martin v. Martin*, 125 Iowa, at 74, 75. Said act of assembly does not attempt to change a single requisite to our jurisdiction. Before its passage, we held, in *Doerr v. Southwestern Mut. L. Assn.*, 92 Iowa 39, that a notice of appeal which has no signature above the descriptive words, "Attorney for defendant," is no notice, and that there must be a dismissal, though the plaintiff "appeared in response to the paper, filed his arguments on the merits, and did not object to the jurisdiction of the court until after the time had expired in which defendant might have served a proper notice." The abstract in this case sets out what purports to be a copy of the notice of appeal, and recites no signature. So far as the Peterson Act is concerned, a signed notice of appeal is as essential to appellate jurisdiction as it was when *Doerr's* case was decided. Its sole provision is this:

"All objections to the jurisdiction of the court to entertain an appeal must be made in printed form stating specifically the ground thereof and served upon the appellant or his attorney of record not less than 10 days before the date assigned for the submission of the case."

It will be noticed that this, as said, attempts no change in jurisdictionals, does not say that the court may not raise objections to its jurisdiction *sua sponte,* and is merely a provision as to the form and time of serving such objections as appellee may make.

To shorten the discussion, I will concede that this has changed the rule that mere failure to show jurisdiction works dismissal, and concede that if, for all that appears on the abstract, there may or may not be jurisdiction, a failure to proceed as the act requires concludes appellee from asserting

want of jurisdiction if the court assumed it. But what of a case when the court observes without objection made that the abstract shows affirmatively a want of jurisdiction? If, say, it reveals a non-appealable order, or that notice of appeal was served a year after entry of the judgment attempted to be appealed, will failure of appellee to make objection or to object in the manner and time prescribed by said statute justify us in proceeding to appellate decision? The majority is of opinion that the act does justify so proceeding. It holds: (1). That the Peterson Act, which does not pretend to change the foundations for jurisdiction, compels thus proceeding; (2) that it would lead to great confusion if there were one result where the court did, and another where it failed to, notice that jurisdiction was lacking; (3) and that, at all events, the abstract here exhibits mere paucity of recital, and does not affirmatively disclose lack of jurisdiction.

II. I see no occasion to devote much time to the second position, and do not care to speculate with the majority on situations wherein a judgment may be held valid if the court makes no discovery that the record has a jurisdictional flaw, whereas one with a like record on appeal is treated as valid because there was not such discovery. The courts have often risked the dire consequences with possibility of which the majority makes an argument. In *Iowa City v. Johnson County,* 99 Iowa, at 514, an appeal was decided, and later a rehearing granted and a resubmission had. No one made objection to jurisdiction, but this is said on final opinion by Mr. Justice Deemer, for the court:

"We have now discovered that we had no jurisdiction of the case at the time the original opinion was filed, for the reason that the abstract did not show service of a notice of appeal upon the clerk of the district court."

The appeal was thereupon dismissed. In *Ex parte Crenshaw,* 15 Peters (U. S.) *119, the head note is this:

"An appeal was prosecuted by the complainants in the circuit court of Alabama, to the Supreme Court, and the cita-

tion required by the Act of Congress had not been served on the appellee, and he had no notice of the appeal. In printing the copy of the record of the circuit court, the return of the marshal of the district, stating that the citation to the appellee had not been served, was accidentally omitted.''

The appeal went to decision, and no objection was made until after mandate had issued. The Supreme Court declared that its judgment ''was utterly null and void,'' and revoked its mandate. In either case, the judgments would have appeared to be effective if the court had not made its discovery. These courts could and did act on their own motion, as I would here. The consequences of discovering and not discovering were the same as now. But said decisions were made before the taking effect of said practice statute. The question is, then, not one of consequences, but of the effect of that statute upon the power of the court to dismiss an appeal on its own motion.

III.   Over and again the opinion asserts in various forms of expression that this abstract merely lacks in fullness of jurisdictional recital; that this is a case of silence, rather than an affirmative showing of want of jurisdiction. As I have indicated; it does hold that, if such defect did appear affirmatively, it would not avail without objection under the Peterson Act. But the most insistent and most elaborated argument is in the nature of an avoidance, an assumption that here is a failure to show existence, rather than a confession of want, of jurisdiction. This begs the question. I have no quarrel with holding that mere failure to aver jurisdictionals is no longer a justification for dismissal. But I am unable to agree that the abstract here fails to exhibit lack of jurisdiction affirmatively. The recital is this:

''On November 27, 1914, the plaintiff filed the following notice of appeal:

''To the above named defendant and to Ed. D. Samson, its attorney of record, and to J. P. Maher, clerk of the district court of Polk County, Iowa: You and each of you are hereby

notified that the plaintiff in the above entitled case has appealed from so much of the rulings and judgments of the district court as reduced the verdict of the jury in this case from $605, as rendered by the jury, to $500, as arbitrarily fixed by the court, and from the ruling of the equity division of said court in refusing to retax the costs of the trial in the equity division to the defendant. All of which take due and legal notice.''

This was filed with the certificate ''that the above and foregoing, together with the abstract of the appellant, heretofore served and filed in this case, contains a full, true and correct abstract of the record so far as it is necessary to the determination of the issues in this appeal.''

I am unable to see how this differs from a statement that a true copy of the notice is set out. The recital has quotation marks. That is an assertion that it is a copy. There is a presumption that the abstract sets out all the record correctly. True, that does not include immaterial matter. But under the *Doerr* case, supra, the signature to the notice is not immaterial matter. The major thought that underlies the opinion is that all this is merely a failure to assert that there was a signature,—a failure to set out what may exist; that, notwithstanding what is, or rather, what is not, set out, the notice may have been signed. As I view it, it is a positive assertion, aided by a rebuttable presumption, that the notice of appeal is *exactly* what is quoted in the abstract, as to all things that are material in and to such a notice. I am, therefore, constrained to say that there is an affirmative showing that there was no notice of appeal. If that be so, the Peterson Act can be no warrant for entertaining the appeal. If it can be, then it would be one if it appeared that an appeal to this court was taken from the judgment of a justice of the peace. The Peterson Act does not disenable an appellant from dismissing his appeal by his own confession. It may be that failure to assert lack of jurisdiction, where the record does not exhibit such lack, may work an estoppel to question

jurisdiction after it has been assumed, because no objection was made. But if it appear upon the record itself that no appeal has been perfected, I cannot see why steps should be taken to advise this court of what it must see unless it fails to read the record. When it appears affirmatively that we are without power to act, if that can be cured by failure to object, then the Peterson Act has worked the further change that jurisdiction may be conferred by consent.